No. 14-56895

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CHRISTINE MYERS, as Guardian Ad Litem
for L. M., a minor, individually,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

---

On appeal from the United States District Court for the
Southern District of California, San Diego, No. 3:02-cv-01349-BEN-MDD
Honorable Roger T. Benitez, District Judge

---

## PLAINTIFF-APPELLANT'S EXCERPTS OF RECORD
## VOLUME 1 OF 4 (PAGES 1-35)

---

Stephen T. Cox (SBN 39040)
  scox@bzbm.com
**BARTKO, ZANKEL, BUNZEL &
MILLER**
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Scott J. Allen (SBN 178925)
  sjallenlaw@gmail.com
**LAW OFFICES OF SCOTT J.
ALLEN**
25 Glen Lake Drive
Pacific Grove, California 93950
Telephone: (831) 655-3606

*Attorneys for Plaintiff/Appellant*
*CHRISTINE MYERS, as Guardian Ad Litem for L. M., a minor, individually,*

## INDEX OF APPELLANT'S EXCERPTS OF RECORD

### VOLUME 1

| Date | Description | Docket No. | Pages |
|------|-------------|-----------|-------|
| 12/3/2014 | Notice of Appeal | DK-574 | ER0001 |
| 11/20/2014 | Judgment in a Civil Case | DK-572 | ER0003 |
| 9/25/2014 | Reporter's Transcript of Status Hearing (Excerpt) | | ER0004 |
| 12/5/2011 | Reporter's Transcript of Appeal Mandate Hearing (Excerpt) | DK-471 | ER0028 |

### VOLUME 2

| Date | Description | Docket No. | Pages |
|------|-------------|-----------|-------|
| 11/20/2014 | Decision With Findings of Fact and Conclusions of Law | DK-571 | ER0036 |
| 9/12/2014 | Plaintiff's Request for Status Conference | DK-567 | ER0156 |
| 6/24/2013 | Plaintiff's Proposed Findings of Fact and Conclusions of Law | DK-557 | ER0161 |
| 3/8/2013 | Reporter's Transcript of Bench Trial, Day 11 (Excerpt) | DK-553 | ER0204 |
| 3/6/2013 | Reporter's Transcript of Bench Trial, Day 9 (Excerpt) | DK-551 | ER0207 |
| 3/5/2013 | Reporter's Transcript of Bench Trial, Day 8 (Excerpt) | DK-550 | ER0211 |
| 2/28/2013 | Reporter's Transcript of Bench Trial, Day 6 (Excerpt) | DK-548 | ER0214 |
| 2/27/2013 | Reporter's Transcript of Bench Trial, Day 5 (Excerpt) | DK-547 | ER0220 |

| Date | Description | Docket No. | Pages |
|------|-------------|-----------|-------|
| 2/26/2013 | Reporter's Transcript of Bench Trial, Day 4 (Excerpt) | DK-546 | ER0228 |
| 2/22/2013 | Reporter's Transcript of Bench Trial, Day 3 (Excerpt) | DK-545 | ER0246 |
| 2/20/2013 | Reporter's Transcript of Bench Trial, Day 1 (Excerpt) | DK-543 | ER0262 |
| 10/12/2011 | U.S. Court of Appeals Mandate (Case No. 09-56092) | CA-36 | ER0265 |
| 10/3/2011 | U.S. Court of Appeals Order Denying Appellee's Petition for Rehearing and Rehearing En Banc (Case No. 09-56092) | CA-35 | ER0266 |
| 7/14/2009 | Notice Of Appeal | DK-434 | ER0268 |
| 5/15/2009 | Judgment in a Civil Case | DK-424 | ER0270 |
| 5/15/2009 | Decision with Findings of Fact and Conclusions of Law | DK-423 | ER0271 |
| 2/10/2006 | Reporter's Transcript of Pretrial Conference (Excerpt) | DK-449 | ER0284 |
| 2/10/2006 | Order re Motions in Limine | DK-393 | ER0288 |
| 9/16/2005 | Order Adopting Report and Recommendation | DK-374 | ER0295 |
| 7/29/2005 | Plaintiff's Memorandum of Contentions of Fact and Law/Pretrial Disclosures | DK-359 | ER0297 |

**VOLUME 3**

| Date | Description | Docket No. | Pages |
|------|-------------|-----------|-------|
| 7/22/2005 | Plaintiff's Memorandum in Support of Motions in Limine | DK-356 | ER0316 |
| 7/12/2005 | Minute Order re Bifurcation | DK-344 | ER0329 |

| Date | Description | Docket No. | Pages |
|---|---|---|---|
| 4/22/2005 | Report and Recommendation Granting in Part and Denying in Part Defendant's Motions to Exclude the Expert Testimony of Dr. Sandra Brown, Ph.D., Dr. Ron Briggs, Ph.D., Roman Worobel, CIH, Dr. Ben Renfroe, M.D., and Dr. Ronald Yarbrough, Ph.D. (Excerpt) | DK-292 | ER0330 |
| 7/10/2002 | Complaint for Damages and Demand for Jury Trial | DK-1 | ER0335 |
| | Admitted Trial Exhibit 96 (Excerpt) | | ER0352 |
| | Admitted Trial Exhibit 107A | | ER0355 |
| | Admitted Trial Exhibit 107B | | ER0357 |
| | Excerpt of Admitted Trial Exhibit 212 (Excerpt) | | ER0382 |
| | Admitted Trial Exhibit 217 (Excerpt) | | ER0384 |
| | Admitted Trial Exhibit 605 (Excerpt) | | ER0398 |
| | Admitted Trial Exhibit 609 (Excerpt) | | ER0402 |
| | Admitted Trial Exhibit 612-C | | ER0413 |
| | Admitted Trial Exhibit 721 (Excerpt) | | ER0414 |
| | Admitted Trial Exhibit 730 (Excerpt) | | ER0416 |
| | Admitted Trial Exhibit 746 | | ER0434 |
| | Admitted Trial Exhibit 775 (Excerpt) | | ER0444 |

| Date | Description | Docket No. | Pages |
|------|-------------|------------|-------|
| | Admitted Trial Exhibit 833 (Excerpt) | | ER0446 |
| | Admitted Trial Exhibit 845 | | ER0467 |
| | Admitted Trial Exhibit 860 (Excerpt) | | ER0477 |
| | Admitted Trial Exhibit 862 | DK-536 | ER0479 |
| | Admitted Trial Exhibit NR (Excerpt) | | ER0601 |

**VOLUME 4**

| Date | Description | Docket No. | Pages |
|------|-------------|------------|-------|
| | United States Court of Appeal for the Ninth Circuit Docket (Case No. 09-56092) | | ER0604 |
| | U.S. District Court Southern District of California Civil Docket (Case No. 3:02-cv-01349-BEN-MDD) | | ER0610 |

Stephen T. Cox, State Bar No. 39040
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Scott J. Allen, State Bar No. 178925
LAW OFFICES OF SCOTT J. ALLEN
25 Glen Lake Drive
Pacific Grove, CA  93950
(831) 655-3505
sjallenlaw@gmail.com

Attorneys for PLAINTIFFS Christine Myers
and L. Myers

## UNITED STATES DISTRICT COURT

## SOUTHERN OF CALIFORNIA

| | |
|---|---|
| CHRISTINE MYERS, as guardian ad litem for L. Myers, a minor, individually, | 02-CV-1349-BEN(MDD) |
| Plaintiff, | **NOTICE OF APPEAL** |
| v. | |
| UNITED STATES OF AMERICA, et al. | |
| Defendants. | |

NOTICE OF APPEAL
(02-CV-1349-BEN (MDD))

| 1 | Notice is hereby given that Christine Myers, as guardian ad litem for L. |

1   Notice is hereby given that Christine Myers, as guardian ad litem for L.

2 Myers, plaintiff in the above named case, hereby appeals to the United States Court

3 of Appeals for the Ninth Circuit from the Judgment in a Civil Case entered in this

4 action on November 20, 2014 (Docket Entry 572).

5   Respectfully submitted,

6 Dated: December 3, 2014          **LAW OFFICES OF SCOTT J. ALLEN**

7

8

9                /s/ Scott J. Allen

10                Scott J. Allen
                Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER0002



# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

CHRISTINE MYERS Acting as guardian
ad litem for L. Myers, a minor,

**Civil Action No.** 02-cv-01349-BEN-MDD

**Plaintiff,**

V.

UNITED STATES OF AMERICA,

**JUDGMENT IN A CIVIL CASE**

**Defendant.**

**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

the Judgment is in favor of the Defendant.

**Date:**   11/20/14

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By:  s/ K. Betancourt

K. Betancourt, Deputy

11:10:55  1                    UNITED STATES DISTRICT COURT

        2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

        3

        4
          MYERS, ET AL,                      . NO. 02-CV-1349
        5                                    . SEPTEMBER 25, 2014
               PLAINTIFF,                    . SAN DIEGO, CALIFORNIA
        6                                    .
                      VS.                    .
        7                                    .
          UNITED STATES OF AMERICA, ET AL    .
        8                                    .
               DEFENDANTS.                   .
        9     . . . . . . . . . . . . . . . ..

11:10:55 10

       11

       12                    TRANSCRIPT OF STATUS HEARING
                      BEFORE THE HONORABLE ROGER T. BENITEZ
       13                  UNITED STATES DISTRICT JUDGE

       14   APPEARANCES:

       15   FOR THE PLAINTIFF:      BARTKO, ZANDEL, TARRANT & MILLER
                                    BY: STEPHEN T. COX
       16                           ONE EMBARCADERO CENTER, SUITE 800
                                    SAN FRANCISCO, CALIFORNIA  94111
       17
                                    LARIVIERE, GRUBMAN, PAYNE LLP
       18                           BY: SCOTT JEFFREY ALLEN
                                    19 UPPER RAGSDALE DRIVE, SUITE 200
       19                           MONTEREY, CALIFORNIA  93942

       20   FOR THE DEFENDANT:      UNITED STATES DEPARTMENT OF JUSTICE
                                    BY: JOHN ADAM BAIN
       21                           1331 PENNSYLVANIA AVENUE, SUITE 8014-S
                                    WASHINGTON, D.C.  20004
       22
            COURT REPORTER:         JULIET Y. EICHENLAUB, CSR, RPR
       23                           USDC CLERK'S OFFICE
                                    333 WEST BROADWAY, SUITE 420
       24                           SAN DIEGO, CALIFORNIA  92101
                                    JULIET_EICHENLAUB@CASD.USCOURTS.GOV
       25
            REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

                                                                      1

ER0004

```
11:10:55   1              SAN DIEGO, CALIFORNIA; SEPTEMBER 25, 2014

           2                         * * * *

           3         THE CLERK:  ONE ON CALENDAR, 02-CV-1349, MYERS, ET AL

           4    VERSUS UNITED STATES OF AMERICA, ET AL; STATUS

           5    CONFERENCE.

           6         THE COURT:  ALL RIGHT.  COUNSEL, PLEASE REGISTER YOUR

           7    APPEARANCES FOR THE RECORD.

           8         MR. COX:  YES, YOUR HONOR.  STEVE COX AND SCOTT ALLEN

           9    FOR THE PLAINTIFFS THE MYERS FAMILY.

          10         MR. BAIN:  ADAM BAIN FOR THE UNITED STATES.

          11         THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR BEING

          12    HERE THIS MORNING.  I ASKED YOU TO BE HERE BECAUSE I

          13    RECEIVED A REQUEST FOR A STATUS CONFERENCE FROM MR. COX.

          14    MR. COX WAS CONCERNED ABOUT HOW LONG IT'S TAKING ME TO

09:32:48  15    DECIDE THIS CASE, AND SO I THOUGHT PERHAPS WE COULD TAKE

          16    THIS OPPORTUNITY TO TALK ABOUT A COUPLE OF THINGS.

          17         FIRST OF ALL, MR. COX, DO YOU RECALL WHEN WE FINISHED

          18    THE TRIAL, THE SECOND PHASE OF THE TRIAL IN THIS CASE?

          19         MR. COX:  YES, YOUR HONOR.

          20         THE COURT:  WHEN WAS THAT?

          21         MR. COX:  IT WAS MARCH -- I DON'T KNOW -- 8TH OR 9TH

          22    OR 10TH, SOMETHING LIKE THAT, OF 2013.

          23         THE COURT:  NOW, DURING THE TRIAL, THERE WAS SOME

          24    EXHIBITS THAT WERE ALLUDED TO, RIGHT?

          25         MR. COX:  YES, YOUR HONOR.
```

11:54:11   1    TRYING TO FIGURE OUT HOW DID HE RULE OUT -- I SPECIFICALLY

2    ASKED YOU ABOUT ALOPECIA AREATA.  NEXT I'M GOING TO ASK

3    ABOUT TELOGEN EFFLUVIUM, BUT LET'S STICK WITH ALOPECIA

4    AREATA FOR RIGHT NOW.  HOW DID HE RULE THAT OUT?  WHAT WAS

5    THE PROCESS HE USED?  MR. ALLEN HAS TOLD ME THE RAPIDITY

6    OF THE HAIR LOSS AND THE LAB RESULT.  WAS THERE ANYTHING

7    ELSE?

8        MR. COX:  HE SAID SOMETHING ABOUT NAIL PITTING.

9        THE COURT:  YEAH, BECAUSE LACIE HAD A NAIL PIT, BUT

10    SHE DIDN'T HAVE BEAU'S LINES.  IF SHE HAD A NAIL PIT, IT

11    WOULD BE MORE CONSISTENT WITH ALOPECIA AREATA THAN --

12        MR. COX:  I THINK HE TESTIFIED IF YOU HAD NAIL

13    PITTING FROM ALOPECIA AREATA, IT'S ALL OVER YOUR NAILS.

14    SHE HAD ONE.

11:54:59   15        THE COURT:  NO.  DON'T B.S. ME, MR. COX.  THAT'S NOT

16    WHAT HE SAID.  WHAT HE SAID WAS IF YOU HAVE THALLIUM

17    TOXICITY, YOU'LL NORMALLY HAVE BEAU'S LINES WHICH ARE

18    SEMI-LUNAR LINES THAT GO ACROSS THE NAIL, THAT HE DIDN'T

19    OBSERVE THOSE WITH LACIE.  BUT HE DID OBSERVE A PIT, AND

20    THEN HE TOLD ME WHAT A PIT WAS.  HE SAID IT'S SOMETHING

21    LIKE A GOLF BALL.  OKAY.  WHAT ELSE DID HE USE TO RULE OUT

22    ALOPECIA AREATA?  GENTLEMEN?

23        MR. COX:  I'M READING DR. EICHENFIELD'S TESTIMONY,

24    YOUR HONOR, TO TRY TO ANSWER YOUR QUESTION.

25        THE COURT:  I KNOW.  BUT GENTLEMEN, IN THE SOUTHERN

84

11:55:57  1    DISTRICT, WE HAVE THE FOURTH HIGHEST CASE LOAD IN THE

         2    COUNTRY.  I HAVE A LOT OF CASES THAT I WORK WITH.  OKAY?

         3    I KNOW THE ANSWER TO THE QUESTION, BUT I NEED YOU TO

         4    VERIFY FOR ME WHAT IT IS.  NOW SURELY, SURELY -- YOU FOLKS

         5    HAVE BEEN LIVING WITH THIS CASE FOR A LONG TIME.  SURELY,

         6    YOU CAN TELL ME.  DR. EICHENFIELD IS ONE OF YOUR PREMIERE

         7    EXPERTS.  SO TELL ME WHAT IT IS HE USED TO RULE OUT

         8    ALOPECIA AREATA.  IS THAT IT; THE LAB RESULT AND THE

         9    RAPIDITY OF THE HAIR LOSS?

        10        MR. COX:  AND DIMPLING, THE LACK OF DIMPLING IN THE

        11    NAIL.

        12        THE COURT:  HE SAID SHE HAD A DIMPLE.

        13        MR. COX:  HE SAYS, ON PHYSICAL EXAMINATION ALSO

        14    INCLUDED EVALUATION OF THE NAIL.  SHE HAD EVIDENCE OF

11:56:41 15    LONGITUDINAL RIDGES WITHOUT PITS, AND SO THAT'S JUST A

        16    FINDING.  RIDGES ARE THINGS, LITTLE LINES THAT YOU CAN SEE

        17    ON THE NAILS, BUT SHE DIDN'T HAVE A LOT OF DIMPLES.

        18    DIMPLING IS SOMETHING --

        19        THE COURT:  WAIT.  STOP.  I'M SORRY.  READ THAT

        20    AGAIN.

        21        MR. COX:  DID YOU HAVE AN ASSESSMENT AT THAT TIME?

        22    YES.  WE ALSO JUST, PHYSICAL EXAMINATION ALSO INCLUDED

        23    EVALUATION OF THE NAILS.

        24        THE COURT:  RIGHT.

        25        MR. COX:  AND SHE HAD EVIDENCE OF LONGITUDINAL

85

12:34:58  1        THE COURT: HOW ABOUT DR. BROWN, DID SHE SEE THE LAB

2     RESULTS?

3        MR. COX: I'M NOT SURE. I KNOW WE TALKED ABOUT THEM.

4     I'M NOT SURE IF SHE SAW THEM, BUT SHE MAY HAVE.

5        THE COURT: YOU TOLD HER WHAT THE RESULTS WERE?

6        MR. COX: I BELIEVE SO.

7        THE COURT: YOU TOLD HER THEY WERE 6.9 OR 9.52?

8        MR. COX: HONESTLY, I DON'T REMEMBER SPECIFICALLY

9     TALKING ABOUT THE LAB RESULTS TO HER. I KNOW THAT SHE HAD

10    SOME KNOWLEDGE OF THEM. I'M NOT SURE WHERE THAT CAME

11    FROM.

12       THE CLERK: HOW WOULD SHE HAVE KNOWLEDGE OF THEM?

13       MR. COX: I KNOW KNOW. SHE SAW THEM IN A DOCUMENT

14    SOME PLACE, SOME REFERENCE TO IT.

12:35:34 15       THE COURT: WHAT DOCUMENTS?

16       MR. COX: I DON'T KNOW. I'M NOT SURE SHE DID.

17       THE COURT: ALL RIGHT. WELL, THAT'S A BETTER

18    ANSWER.

19       MR. COX: I'M NOT SURE SHE DID. I'M TRYING TO HELP

20    YOU, JUDGE.

21       THE COURT: I KNOW, BUT I DON'T WANT YOU MAKING UP

22    STUFF.

23       MR. COX: DR. BROWN'S EVALUATION AND HER TESTIMONY

24    HAD TO DO WITH THE PSYCHOMETRIC TESTING THAT SHE PERFORMED

25    AND THE RESULTS --

112

12:55:06    1         THE COURT: OKAY. LOOK IT UP. TELL ME IF I'M

2   WRONG.

3         MR. COX: I'VE BEEN READING IT, AND WHAT HE SAID IS

4   THE 6.9 WAS A POSITIVE FINDING, AND THE 9.52 WAS A

5   POSITIVE FINDING. THE 15.43 LEAD CREDENCE TO THE FACT

6   THAT THE 6.9 WAS POSITIVE.

7         THE COURT: YOU KNOW, I JUST HAVE THE HARDEST TIME

8   GETTING YOU TO ANSWER QUESTIONS FOR ME, MR. COX.

9         MR. COX: YOU'RE ASKING ME A QUESTION -- DO YOU HAVE

10   A PARTICULAR PAGE IN MIND FOR ME TO READ?

11         THE COURT: LOOK AT THE END OF HIS DEPOSITION. NOW

12   TELL ME IF IT'S NOT TRUE, TELL ME IF IT'S NOT TRUE THAT HE

13   SAID ALL FOUR OF THOSE ARE A POSITIVE DETECTION OF

14   THALLIUM, AND HE ALSO SAID THEY'RE ALL BELOW FIVE.

12:55:55   15         MR. COX: I DON'T SEE THAT TESTIMONY IN THE LAST

16   PAGE.

17         THE COURT: I DIDN'T SAY IT WAS IN THE LAST PAGE. I

18   SAID LOOK TOWARDS THE END.

19         MR. COX: YOU'LL HAVE TO ALLOW ME TO GO FIND WHAT

20   YOU'RE TALKING ABOUT SO THAT I CAN SIT DOWN AND -- I'M NOT

21   TRYING TO BE DIFFICULT, YOUR HONOR. BUT YOU'RE ASKING ME

22   ISN'T IT TRUE THIS AND THAT, AND I DON'T KNOW. I GOT TO

23   LOOK AT THIS. MY RECOLLECTION IS --

24         THE COURT: MR. BAIN, DO YOU REMEMBER?

25         MR. BAIN: I DO REMEMBER. WE PUT THAT DEPOSITION UP

126

12:57:32  1          MR. COX:  JUDGE, YOU WOULDN'T DO THAT.

         2          THE COURT:  I'LL HAMMER YOU.  I'LL CROSS-EXAMINE YOU.

         3      BUT I'M NOT ABOUT TO MISLEAD YOU.  IF YOU READ HIS

         4      TESTIMONY, YOU'LL SEE EXACTLY WHAT HE SAID WHICH HAS BEEN

         5      TROUBLING ME WHICH IS WHY I HAVE BEEN SAYING, YOU KNOW

         6      WHAT, WHERE'S THE TECHNICIAN?  I WOULD HAVE LOVED TO TALK

         7      TO THE TECHNICIAN AND SAY, WAIT A MINUTE, HOW IS IT THAT

         8      MR. DUNN SAYS THESE FOUR RESULTS ARE BELOW FIVE?  SHE

         9      MIGHT HAVE HAD AN EXPLANATION, AN EXPLANATION THAT WOULD

        10      SATISFY ME, BUT I DON'T KNOW.

        11          MR. COX:  THE 9.52 IS NOT BELOW FIVE.

        12          THE COURT:  I UNDERSTAND.  I HEAR YOU.

        13          MR. COX:  IF YOU THINK THAT HE WAS INCLUDING THAT AS

        14      BEING BELOW FIVE, I THINK YOU'RE MISTAKEN.  I THINK IT WAS

12:58:17 15      HE MISSPOKE HIMSELF BECAUSE IT'S OBVIOUSLY NOT BELOW FIVE.

        16      THE TESTIMONY THAT HE WAS TALKING OR THE FINDING HE WAS

        17      TALKING ABOUT WAS THE 6.9 BECAUSE THEY HAD TO DILUTE IT

        18      AND SO THE ACTUAL FINDING WAS 3.45 I THINK.  BUT YOU HAVE

        19      TO ADJUST IT BACK UP FOR THE DILUTION FACTOR TO GET TO

        20      6.9.

        21          THE COURT:  MR. BAIN, I DON'T HAVE THE RECORD IN

        22      FRONT OF ME, BUT CORRECT ME IF I'M WRONG, DIDN'T MR. DUNN

        23      SAY ALL FOUR OF THEM WERE LESS THAN FIVE, AND I THINK

        24      EITHER MR. ALLEN OR MR. COX THEN ASKED HIM THE QUESTION,

        25      BUT THEY WERE ALL POSITIVE DETECTIONS FOR THALLIUM, RIGHT?

                                                                    128

13:11:33  1    THE COURT:  HE SAID HE WASN'T FAMILIAR WITH IT.  IT

       2   TOOK ABOUT HALF A PAGE OF THE TRANSCRIPT.

       3    MR. COX:  OKAY.  SO WE TALKED ABOUT IT WITH HIM.  I

       4   KNOW I WAS USING THE POLICY MANUAL TO CROSS-EXAMINE THE

       5   GOVERNMENT WITNESSES.

       6    THE COURT:  LET'S GO ON.  JANET CORBETT, YOU DID TALK

       7   TO JANET CORBETT, THREE PAGES OUT OF 625 PAGES DURING THE

       8   FIRST THREE DAYS.  KEVIN HUBBARD, DID YOU EVER TALK TO HIM

       9   ABOUT THE POLICY MANUAL?  I'LL ANSWER IT FOR YOU.  THE

      10   ANSWER IS NO.

      11    MR. COX:  I DON'T THINK SO.

      12    THE COURT:  HOW ABOUT ROMAN WOROBEL?  DID YOU TALK TO

      13   HIM ABOUT THE POLICY MANUAL?

      14    MR. COX:  I DON'T RECALL.

13:12:11 15    THE COURT:  HE DIDN'T IT.  HOW ABOUT ERIN HUGHES, DID

      16   YOU TALK TO HER ABOUT THE POLICY MANUAL?

      17    MR. COX:  NO.

      18    THE COURT:  HOW ABOUT RON BRIGGS?

      19    MR. COX:  NO.

      20    THE COURT:  FRED MLAKAR?

      21    MR. COX:  DON'T REMEMBER.

      22    THE COURT:  DANNY FIELD?

      23    MR. COX:  DON'T RECALL.  MAYBE.  DON'T REMEMBER.

      24    THE COURT:  I HAVE ONE MORE LITTLE AREA I WANT TO

      25   COVER WITH YOU SINCE YOU'RE HERE.  I HAVE A BONE TO PICK

| | | |
|---|---|---|
| 13:12:44 | 1 | WITH YOU, AND THAT IS THIS: YOU SAID TO THAT PANEL OF |
| | 2 | JUDGES SITTING ACROSS THE WELL FROM YOU, WHEN YOU WERE |
| | 3 | ASKED ABOUT HOW THE CAUSATION ISSUES CAME UP, REMEMBER |
| | 4 | JUDGE RAWLINSON, YOU SAID -- BECAUSE I THINK JUDGE BENNETT |
| | 5 | THREW YOU A SOFTBALL. HE LOBBED ONE AT YOU. AND YOU |
| | 6 | SAID, WELL, YEAH, WE WERE TALKING ABOUT CAUSATION, AND THE |
| | 7 | JUDGE SPENT ALL THAT TIME TALKING ABOUT CAUSATION IN HIS |
| | 8 | ORDER. DO YOU REMEMBER THAT DISCUSSION WITH JUDGE |
| | 9 | CORBETT(VERBATIM) AND JUDGE RAWLINSON? |
| | 10 | MR. COX: YES, I REMEMBER THE ISSUE. |
| | 11 | THE COURT: DO YOU REMEMBER JUDGE RAWLINSON SAID TO |
| | 12 | YOU, WELL, IN ALL FAIRNESS, ISN'T IT A FACT THAT BOTH OF |
| | 13 | YOU TALKED ABOUT CAUSATION? DO YOU REMEMBER THAT |
| | 14 | QUESTION? |
| 13:13:47 | 15 | MR. COX: BOTH OF YOU, MEANING? |
| | 16 | THE COURT: BOTH OF YOU; BOTH YOU AND THE |
| | 17 | GOVERNMENT. |
| | 18 | MR. COX: YES. |
| | 19 | THE COURT: YOU REMEMBER SHE ASKED YOU THAT QUESTION? |
| | 20 | MR. COX: I DON'T REMEMBER, BUT I DON'T DISPUTE IT. |
| | 21 | I'M SURE YOU GOT THE RECORD THERE. |
| | 22 | THE COURT: THIS IS REALLY IMPORTANT TO ME. THIS IS |
| | 23 | A REALLY IMPORTANT ISSUE TO ME. IT HAS NOTHING TO DO WITH |
| | 24 | MY FINDING AS TO WHETHER OR NOT THE GOVERNMENT PREVAILS OR |
| | 25 | YOU PREVAIL, BUT IT'S IMPORTANT TO ME BECAUSE THEN YOU |

138

ER0012

14:36:01  1      WERE TRYING WAS THE GOVERNMENT'S NEGLIGENCE.

2              THE COURT:  YES.

3              MR. COX:  IN MY VIEW, IF WHAT YOU'RE TRYING IS THE

4      GOVERNMENT'S NEGLIGENCE, YOU DON'T NEED TO KNOW ANYTHING

5      ABOUT THE URINE SAMPLES; YOU DON'T NEED TO KNOW ANYTHING

6      ABOUT WHAT, ANY OF SHIELDS' TESTIMONY.

7              THE COURT:  SO TELL ME, SINCE YOU HAVE MY TRANSCRIPT

8      THERE, TELL ME WHO RAISED THE ISSUE OF LACIE'S URINE

9      FIRST.

10             MR. COX:  I DID.

11             THE COURT:  WHEN?

12             MR. COX:  IN THE MOTION TO PREVENT SHIELDS TESTIFYING

13     BEFORE WE STARTED?

14             THE COURT:  NO, NO.  DURING THE TRIAL, WHEN DID YOU

14:36:43 15     FIRST RAISE IT?

16             MR. COX:  THE URINE SAMPLES WERE FIRST RAISED WITH

17     DR. BRIGGS.  HE WAS ON THE THIRD DAY.

18             THE COURT:  NO, THAT'S NOT TRUE.  YOU RAISED IT IN

19     YOUR OPENING STATEMENT.

20             MR. COX:  OKAY.  I THOUGHT YOU WERE TALKING ABOUT

21     TESTIMONY, YOUR HONOR.

22             THE COURT:  YOU RAISED IT IN YOUR OPENING

23     STATEMENT.

24             MR. COX:  OF COURSE I DID.

25             THE COURT:  AND WHAT DID I SAY TO YOU?

143

14:38:40  1       QUESTION:  AND SO THE DISTRICT COURT IGNORED ALL OF

2    THIS EVIDENCE IN YOUR VIEW?

3       ANSWER:  YES, BASICALLY, IN MY VIEW, HE IGNORED IT.

4    BASICALLY -- AND HERE IS THE REASON HE IGNORED IT.  WHAT

5    HAPPENED IS AFTER BIFURCATING THIS CASE AND SAYING ALL

6    WE'RE GOING TO TRY IS THE MYERS ISSUE, WHAT HE ENDED UP

7    DOING IS JUST DECIDING IN HIS OWN MIND, WELL THERE REALLY

8    WASN'T VERY MUCH THALLIUM IN THE DIRT AND LACIE COULDN'T

9    HAVE BEEN POISONED BY THE THALLIUM, AND WE CAN LOOK AT

10    AFTER THE FACT TESTS THAT WERE DONE TO SHOW THAT THERE WAS

11    BASICALLY NO CAUSATION WHEN HE HAD BIFURCATED THE CASE AND

12    THE CAUSATION WAS TO BE TRIED LATER.  WE, WE WERE NOT, WE

13    WERE NOT PERMITTED AND DID NOT BRING OUR TOXICOLOGIST WHO

14    WOULD HAVE TESTIFIED THAT LACY WAS POISONED BY THALLIUM --

14:39:23  15       QUESTION:  CAUSATION -- IN ALL FAIRNESS, CAUSATION

16    WAS DISCUSSED BY BOTH PARTIES DURING THE SUPPOSED

17    LIABILITY PHASE.

18       ANSWER:  WELL, CERTAINLY IT STARTED TO CREEP IN WHEN

19    I SAW WHAT THE JUDGE WAS DOING, BUT WE WEREN'T ABLE TO

20    BRING OUR TOXICOLOGIST.  I WANTED TO BRING --"

21       (AFTER AUDIO.)

22       THE COURT:  SO THAT WAS THE COMMENT, THE QUESTION,

23    THAT I HAD, MR. COX.  WHAT WAS IT THAT I SAID OR DID THAT

24    CAUSED CAUSATION TO CREEP INTO THE CASE?

25       MR. COX:  YOUR HONOR, WHAT I WAS REFERRING TO THERE

145

ER0014

14:39:53  1    WAS THE FACT THAT SHIELDS WAS PERMITTED TO TESTIFY, AND IN

2    MY VIEW, HE WAS NOTHING BUT A CAUSATION WITNESS, AND THAT

3    PROMPTED ME TO BRING DR. BRIGGS TO TALK ABOUT THE URINE.

4    AND I THINK WE HAD THIS DISCUSSION, AND YOU SAID, WELL,

5    WHY IS THAT RELEVANT?  AND I SAID, WELL, IF HE'S GOING TO

6    SAY THERE'S NOT ENOUGH THALLIUM IN THE DIRT, THEN WE

7    SHOULD BE PERMITTED TO SAY, YES, BUT THERE'S THALLIUM IN

8    HER URINE, AND THE ONLY PLACE IT COULD HAVE COME FROM IS

9    THE DIRT.  SO THAT REALLY -- AND MY RECOLLECTION AND IT'S

10    BEEN A LONG TIME, I DON'T REMEMBER EXACTLY WHEN THIS CAME

11    UP -- BUT I KNOW WE HAD A MOTION IN LIMINE, I BELIEVE,

12    THAT THEY NOT BE PERMITTED TO BRING SHIELDS IN THIS PART

13    OF THE CASE.

14         THE COURT:  SO BECAUSE DR. SHIELDS, SHERYL LAUTH --

14:40:42  15    YOU OBJECTED TO HER AS WELL -- AND COMMANDER FIELD AND

16    OTHERS WERE GOING TO TESTIFY AS TO THE AMOUNT OF DIRT OR

17    THE AMOUNT OF THALLIUM THAT WAS TESTED IN THE DIRT,

18    SOMEHOW YOU THOUGHT THAT BECAUSE I ALLOWED THAT IN THAT'S

19    WHAT ALLOWED THIS TO CREEP IN, THE CAUSATION; IS THAT WHAT

20    YOU'RE SAYING?

21         MR. COX:  YOUR HONOR, I'M SAYING THAT MY SENSE OF THE

22    CASE WAS IT WAS SUPPOSED TO BE ABOUT NEGLIGENCE.  IN MY

23    JUDGMENT, IT COULD HAVE BEEN TRIED IN A COUPLE THREE DAYS

24    WITH WITNESSES LIKE JERRY DUNAWAY AND PEOPLE LIKE THAT AND

25    THE FOLKS WHO WERE THE CIH PEOPLE, THAT WE NEVER SHOULD

146

14:41:29    1    HAVE GOTTEN INTO LACIE'S ILLNESS, LACIE'S, WHETHER THERE'S

            2    URINE THERE OR NOT, WHETHER SHIELDS' AFTER THE FACT

            3    CALCULATIONS ABOUT THERE WASN'T ENOUGH DIRT TO HURT HER OR

            4    WASN'T ENOUGH CONCENTRATION TO HURT HER AND ALL OF THAT,

            5    TO ME, THAT WAS ALL CAUSATION. THAT SHOULD HAVE BEEN HELD

            6    UP UNTIL WE FINISHED THE FIRST PART OF THE CASE WHICH WAS,

            7    WAS THE GOVERNMENT NEGLIGENT? THAT'S WHAT I'M REFERRING

            8    TO IN THAT THING YOU JUST PLAYED.

            9         MR. BAIN: YOUR HONOR, IF I COULD JUST ADDRESS THIS.

          10    IN THE PRE-TRIAL WE HAD BEFORE THE FIRST TRIAL, THE

          11    PLAINTIFF'S STRONGLY ADVOCATED THAT THEY BE ALLOWED TO

          12    BRING THE URINE DATA INTO THE FIRST PHASE OF THE TRIAL.

          13    THE UNITED STATES OBJECTED TO THAT. IT'S IN DOCKET NUMBER

          14    362 WHICH IS THE FEBRUARY 10TH, 2006, HEARING AT PAGE 20

14:42:22  15    TO 27 OF THAT PARTICULAR TRANSCRIPT. THEY WERE ARGUING

          16    BEFORE THIS EVER, BEFORE DR. SHIELDS WAS EVER

          17    CONTEMPLATED, YOU KNOW, THAT THEY BE ALLOWED TO BRING THE

          18    URINE DATA IN BECAUSE IT WAS SOMEHOW PROOF OF NEGLIGENCE.

          19    AND SO THEY'RE THE ONES WHO OPENED THIS UP.

          20         THE COURT: AND THAT'S CONFIRMED BY, IF WE LOOK AT

          21    PAGE 45 OF THE TRANSCRIPT. AT PAGE 45 OF THE TRANSCRIPT,

          22    I SAID, WHAT'S THE RELEVANCE OF THIS, MR. COX? AND YOU

          23    SAID, THE RELEVANCE IS TWO-FOLD, YOUR HONOR. THERE IS

          24    EVIDENCE THAT WILL BE PRESENTED TO YOU THAT LACIE MYERS'

          25    URINE SAMPLES AND TEST RESULTS FROM THE NATIONAL MEDICAL

ER0016

14:43:09  1    SERVICE WERE MANIPULATED BY THE NAVY PERSONNEL AND

2    COMMUNICATION WITH WILLIAM DUNN WHO WAS THE HEAD

3    TOXICOLOGIST AT NATIONAL MEDICAL.  SO THAT WAS A POSITIVE

4    FINDING UNDER 24 HOUR URINE WHICH THERE WERE TWO SAMPLES

5    TESTED AND A RANDOM URINE RESULT.

6        I'LL MOVE ON.  SO THEN I TOLD YOU, WELL, I'M STILL

7    MISSING THE CONNECTION.  SO WHAT?  SO NOW WE'RE GOING TO

8    TRY, I THINK YOU'RE TELLING ME WE ARE GOING TO TRY WHETHER

9    OR NOT AFTER THE FACT THEY TESTED LACIE AND SURROUNDING

10   AREA TO FIND OUT WHETHER OR NOT THERE WAS THALLIUM?  AND

11   YOUR ANSWER, MR. COX, WAS, YOUR HONOR, I THINK IT'S A

12   LITTLE SIMPLER THAN THAT.  THEIR DEFENSE HERE IS THAT

13   THERE WASN'T ENOUGH THALLIUM TO HURT ANYBODY.  THAT'S

14   IMPEACHED BY THE FACT THAT LACIE HAD MORE THAN TEN TIMES

14:44:00  15   THE AMOUNT OF THALLIUM THAN AN UNEXPOSED ADULT WOULD HAVE.

16   THEN YOU GO ON TO SAY, IF THE 9.52 FINDING BY NATIONAL

17   MEDICAL WHICH THE DIRECTOR OF NATIONAL MEDICAL SAID IT WAS

18   A POSITIVE FINDING, AND SO ON AND SO FORTH.

19       NOW, IT WASN'T ANYTHING THAT I DID, MR. COX.  YOU

20   WANTED TO GET EVIDENCE ABOUT THE URINE CONTENT IN

21   EVIDENCE.  YOU WANTED TO GET IT IN RIGHT AWAY, AND THERE'S

22   A REAL REASON WHY YOU WANTED TO DO THAT.  AND THE REASON

23   WAS THE FIRST THING YOU DID WAS YOU PUT UP A PICTURE OF

24   LACIE IN HER PAJAMAS, AND I THINK SHE WAS HOLDING A LITTLE

25   TEDDY BEAR IF I'M NOT MISTAKEN.  THE ONLY REASON YOU DID

148

14:44:40  1    THAT -- GOVERNMENT COUNSEL OBJECTED AS IT BEING

2    IRRELEVANT, AND I SAID NO, NO, IT'S FOUNDATIONAL, LET IT

3    IN -- THE REASON WHY YOU DID IT, BECAUSE IT IS IRRELEVANT,

4    BUT YOU PUT IT IN THERE BECAUSE YOU KNEW THE EFFECT THAT

5    THAT WOULD HAVE.  YOU KNOW, I DON'T KNOW HOW MANY CASES

6    YOU TRIED BEFORE A JURY, BUT MY GUESS IS YOU PROBABLY

7    TRIED QUITE A FEW, AND YOU ALSO KNOW JURIES ARE SWAYED BY

8    SYMPATHY QUITE OFTEN, AND YOU PUT THAT UP THERE BECAUSE

9    YOU WERE TRYING TO PLAY ON MY EMOTIONS.  AND THEN YOU

10   THOUGHT, IF I CAN GET THIS URINE THING IN THERE, I CAN GET

11   THE JUDGE TO SAY, WOW, THIS LITTLE GIRL HAS A HUGE AMOUNT

12   OF THALLIUM IN HER URINE, AND LOOK HOW SHE LOOKS SO THE

13   GOVERNMENT HAS TO BE NEGLIGENT.  THEN YOU DID ONE MORE

14   CUTE LITTLE TRICK, AND YOU BROUGHT SERGEANT MYERS IN HIS

14:45:34  15   UNIFORM.  DO YOU REMEMBER WHAT YOU'RE COMMENT WAS TO ME

16   ABOUT THAT?

17        MR. COX:  NO.

18        THE COURT:  I DRESSED HIM UP TO LOOK GOOD FOR YOU,

19   JUDGE.

20        MR. COX:  I WAS BEING FACETIOUS.  HE'S OBVIOUSLY AN

21   IMPRESSIVE MAN.

22        THE COURT:  HE IS A VERY IMPRESSIVE MAN.

23        MR. COX:  HE'S A GOOD WITNESS.

24        THE COURT:  I DON'T KNOW ABOUT THAT.

25        MR. COX:  HE LOOKS GOOD.  AND THERE'S NOTHING WRONG

149

14:46:01 1    WITH THAT.

2         THE COURT:  NO, BUT THE POINT IS, YOU WERE THE ONE --

3    IF IT'S TRUE THAT DR. SHIELDS TESTIMONY IS GOING TO BE

4    IRRELEVANT, BECAUSE ALL I HAD SAID WAS THAT HE COULD

5    TESTIFY AS AN EXPERT WITNESS.  I NEVER SAID HE WAS COMING

6    IN TO TESTIFY ON PHASE ONE OF THE TRIAL, DID I?

7         MR. COX:  YOUR HONOR, I THINK YOU DID, AT LEAST THAT

8    WAS MY UNDERSTANDING THAT YOU'RE RULING WAS THAT HE COULD

9    COME IN AND TESTIFY IN THE FIRST PHASE OF THE TRIAL

10   BECAUSE I WAS NOT GOING TO BRING DR. BRIGGS IN THE FIRST

11   PHASE OF THE TRIAL BECAUSE THEY LISTED HIM AS AN EXPERT IN

12   THE FIRST PHASE, AND THEY WERE GOING TO CALL HIM.  AND I

13   THOUGHT, WELL, I READ HIS REPORT, AND I KNEW WHAT HE WAS

14   GOING TO SAY.  AND I SAID, IF HE'S GOING TO SAY THERE'S

14:46:46 15   NOT ENOUGH THALLIUM IN THE DIRT TO HURT ANYBODY, THEN THE

16   URINE SAMPLES IMPEACH THAT.  SO THAT BECAME A CAUSATION

17   ISSUE IN MY VIEW THAT NEVER SHOULD HAVE BEEN IN EITHER

18   WAY.  NOW AT THE TIME OF OPENING STATEMENT, I KNOW THIS IS

19   HOW THIS IS COMING DOWN BECAUSE YOU ALREADY MADE THE

20   RULING THAT HE COULD TESTIFY.  WE ALREADY HAD THAT

21   ARGUMENT.  SO I KNEW HE WAS COMING IN.  I KNEW I WAS GOING

22   TO HAVE TO MEET THAT, AND THE WAY TO DO IT, IN MY

23   JUDGMENT, WAS TO PUT DR. BRIGGS ON AND GIVE THE TESTIMONY

24   ABOUT THE URINE.

25        THE COURT:  OKAY.  WELL, LET ME JUST TELL YOU

150

14:47:29    1    SOMETHING. LET'S ASSUME WHAT YOU'RE SAYING IS TRUE. I

2    THINK DR. SHIELDS COULD HAVE TESTIFIED TO AN AWFUL LOT OF

3    THINGS, AND HE DID, THAT HAD NOTHING TO DO WITH CAUSATION

4    THAT WOULD HAVE HAD A LOT TO DO WITH, FOR EXAMPLE, THE

5    EXCEEDANCES THAT YOU TALKED ABOUT THAT WOULD HAVE HAD A

6    LOT TO DO WITH THE AMOUNT OF DIRT FOUND AT SITE 1-A, SITE

7    1-E, SITE 1-F, SITE 2-A; RIGHT? AND HAD HE GONE ON TO

8    TALK ABOUT LACIE'S URINE OR ABOUT THE SUBSEQUENT SAMPLING

9    -- BEING THE GOOD LAWYER THAT YOU ARE BECAUSE YOU NEVER

10    WERE SHY ABOUT RAISING OBJECTIONS -- YOU WOULD HAVE BEEN

11    ABLE TO DO THAT, WOULDN'T YOU, AND SAY, YOUR HONOR, I

12    OBJECT, THAT'S IRRELEVANT, THAT'S NOT PART OF THIS CASE;

13    RIGHT? IN FACT, I THINK YOU DID THAT A COUPLE TIMES ON A

14    COUPLE OF WITNESSES; RIGHT?

14:48:18   15         MR. COX: I DON'T REMEMBER, YOUR HONOR. PROBABLY

16    DID. BUT I THINK THE WAY THE TRIAL, HONESTLY, THE WAY THE

17    TRIAL WENT, WE WERE TRYING THE ISSUE OF CAUSATION.

18         THE COURT: YES, YOU WERE. THAT'S EXACTLY RIGHT.

19         MR. COX: AS WELL AS THE GOVERNMENT'S NEGLIGENCE.

20         THE COURT: BUT DON'T BLAME IT ON ME. DON'T GO TO

21    THE COURT OF APPEALS AND SAY IT WAS THE JUDGE'S FAULT

22    BECAUSE I HAD NOTHING TO DO WITH IT. THAT'S EXACTLY WHAT

23    YOU WANTED TO DO AT THE VERY BEGINNING. I NOTE THAT IN

24    YOUR OPENING STATEMENT -- BY THE WAY, MR. COX, YOU TOLD

25    THE COURT OF APPEALS THAT THE POLICY MANUAL WAS A VERY

151

14:48:49  1    IMPORTANT ISSUE.  64 PAGES OF OPENING STATEMENT.  DO YOU

         2    KNOW HOW MANY PAGES YOU DEVOTED TO THE POLICY MANUAL?

         3        MR. COX:  I HAVEN'T LOOKED AT THE OPENING STATEMENT

         4    FOR A WHILE, YOUR HONOR.

         5        THE COURT:  THREE-AND-A-HALF.

         6        MR. COX:  OKAY.

         7        THE COURT:  OUT OF 64 PAGES, DO YOU KNOW HOW MANY

         8    PAGES YOU DEVOTED TO TALKING ABOUT CAUSATION?

         9        MR. COX:  I'LL HAVE TO LOOK AT IT.

        10        THE COURT:  19.

        11        MR. COX:  OKAY.

        12        THE COURT:  OUT OF 825 PAGES, I BELIEVE IT WAS THE

        13    FIRST THREE DAYS OF TRANSCRIPT, THERE WERE TEN-AND-A-HALF

        14    PAGES DEVOTED TO THE POLICY MANUAL, TEN-AND-A-HALF PAGES.

14:49:32 15    THERE WERE 183 PAGES --

        16        MR. COX:  I HAVE A SLIGHTLY DIFFERENT COUNT FROM

        17    READING JANET CORBETT'S TESTIMONY.

        18        THE COURT:  TELL ME YOUR COUNT.

        19        MR. COX:  I THINK WE STARTED TALKING ABOUT EXHIBIT

        20    107A AND 107B WHICH WERE THE POLICY MANUALS, AND WE

        21    STARTED AT PAGE 277 AND WENT THROUGH TO 301 OR 302 AND

        22    PART OF THAT WAS THE TESTIMONY THAT I WAS REFERRING TO

        23    WHEN WE STARTED.  SO IT WAS AN ISSUE.  IT WAS A VERY

        24    SIGNIFICANT ISSUE.

        25        THE COURT:  I'M SORRY.  GIVE ME THOSE PAGE NUMBERS

14:51:37  1    THE COURT:  SO THAT'S AN EXHIBIT.  I GOT YOU.

2    MR. COX:  ONE WAS LEADING UP WITH WHAT THE POLICY WAS

3    AND WHERE IT CAME FROM AND ALL OF THAT.  THAT WENT ON FOR

4    SEVERAL PAGES.  AND THEN IN THE CONTEXT OF THAT POLICY

5    MANUAL AND THE CIH, NAVY CIH BEING REQUIRED TO REVIEW IT,

6    WHICH IS WHAT SHE TESTIFIED TO, THEN WE WENT TO THE ACTUAL

7    HEALTH AND SAFETY PLAN AND SAID, HAD YOU SEEN THIS, WOULD

8    YOU HAVE HAD A PROBLEM WITH IT BECAUSE THEY WERE CALLING

9    FOR TOTAL DUST ACTION LEVEL, BUT THEY WEREN'T MEASURING

10    FOR TOTAL DUST.  SO ALL OF THAT IS IN THE CONTEXT OF THE

11    QUESTION I THOUGHT THAT'S WHAT YOU WERE ASKING ME BEFORE

12    LUNCH.

13    THE COURT:  NO.  MY QUESTION WAS WITH REGARD TO THE

14    POLICY MANUAL -- YOU TOLD THE COURT OF APPEALS.  I QUOTED

14:52:23  15    YOU.  I CAN PLAY IT BACK FOR YOU IF YOU WANT.  YOU SAID WE

16    SPENT THE FIRST THREE DAYS TALKING ABOUT THE POLICY

17    MANUAL.  NOT THE HASP, NOT THE EXCEEDANCES.

18    MR. COX:  I THINK WHAT YOU JUST PLAYED WAS ABOUT

19    CAUSATION.

20    THE COURT:  I DID.

21    MR. COX:  NOT THE POLICY MANUAL.

22    THE COURT:  THE QUESTION I ASKED YOU -- I ASKED YOU A

23    QUESTION.  I SAID TO YOU, SIR, YOU TOLD THE COURT OF

24    APPEALS THAT THE REASON WHY YOU STARTED TALKING ABOUT

25    CAUSATION IS BECAUSE SOMETHING I SAID OR DID CAUSED

154

ER0022

14:52:54   1    CAUSATION TO CREEP IN.  THAT'S WHAT YOU TOLD THEM.  I

2    HEARD THAT.

3        MR. COX:  THAT'S A DIFFERENT QUESTION THAN THE POLICY

4    MANUAL.  I THINK THAT'S OVER HERE.  POLICY MANUAL IS OVER

5    HERE.

6        THE COURT:  THAT'S RIGHT.  SO WHAT I WAS TRYING TO DO

7    IS DRAW A COMPARISON FOR YOU, MR. COX, BECAUSE YOU STOOD

8    THERE ACROSS THE WELL FROM THESE THREE JUDGES, AND YOU

9    SAID THE FIRST THREE DAYS WE SPENT THAT'S ALL WE DID IS WE

10   TALKED ABOUT THE POLICY MANUAL.  THAT'S ALL WE DID.  AND

11   THEN YOU KIND OF BACK WALKED IT A LITTLE BIT, AND YOU

12   SAID, THE FIRST TWO OR THREE DAYS IT WAS A CENTRAL ISSUE.

13   AND WHAT I WAS SAYING TO YOU, SIR, IS IN YOUR OPENING

14   STATEMENT YOU SPENT ALMOST 20 PAGES TALKING ABOUT

14:53:40  15   CAUSATION.  YOU SPENT THREE PAGES TALKING ABOUT THE POLICY

16   MANUAL.  AND WHEN WE LOOK AT THE TESTIMONY, YOU SPENT 183

17   PAGES TALKING ABOUT CAUSATION, AND YOU SPENT ABOUT 10

18   PAGES, THAT INCLUDES THE OPENING STATEMENT BY THE WAY,

19   TALKING ABOUT THE POLICY MANUAL.

20       NOW PUT YOURSELF IN MY SHOES WHEN I WAS MAKING MY

21   DECISION.  WHICH ONE OF THOSE TWO THINGS I, AS A JUDGE,

22   WOULD THINK IS MORE IMPORTANT TO YOU?  THE POLICY MANUAL

23   OR THE CAUSATION ISSUES THAT YOU RAISED?

24       MR. COX:  I'M NOT SURE HOW TO ANSWER THAT.  I DON'T

25   KNOW HOW ELSE TO SAY IT.  THE POLICY MANUAL WAS IMPORTANT,

155

14:54:31  1    AND WE WENT INTO IT SIGNIFICANTLY WITH JANET CORBETT AND

2    WITH BRYSON LATER ON.  AND WE WENT INTO CAUSATION FOR THE

3    REASONS I STATED IN THE FIRST THREE DAYS.  DR. BRIGGS WAS

4    ON DAY THREE AND THAT WAS ALL ABOUT THE URINE SAMPLES.  SO

5    I THINK THAT'S CAUSATION.

6        THE COURT:  IT IS CAUSATION.  YOU BET IT'S CAUSATION,

7        MR. COX:  AND I EXPLAINED TO YOU THE REASONS THAT I

8    GOT THERE AND WHY WE HAD TO GO THERE IN MY JUDGMENT

9    REPRESENTING MY CLIENT, AND I DON'T APOLOGIZE FOR THAT.  I

10    THINK IT WAS THE RIGHT THING TO DO.

11        THE COURT:  I'M NOT TELLING YOU TO APOLOGIZE FOR

12    THAT.  WHAT I'M TELLING YOU IS --

13        MR. COX:  SOUNDS LIKE IT.

14        THE COURT:  WHAT I'M TELLING YOU IS, LOOK, I TOLD YOU

14:55:12  15    BEFORE I DON'T MIND LAWYERS WHO ARGUE ABOUT WHETHER A

16    GLASS IS HALF FULL OR HALF EMPTY.  BUT I REALLY DO NOT

17    APPRECIATE LAWYERS WHO COME IN HERE AND ARGUE ABOUT A

18    GLASS BEING HALF EMPTY WHEN THERE'S NO GLASS AT ALL.  THE

19    FACT OF THE MATTER IS YOU WERE THE ONE WHO INITIATED

20    CAUSATION DISCUSSIONS IN THIS CASE.

21        MR. COX:  FOR THE REASONS I STATED, YOUR HONOR, AND I

22    THINK YOUR ANALOGY IS NOT APT.

23        THE COURT:  WELL, ALL RIGHT.  WELL, I JUST WANT TO

24    TELL YOU I JUST DON'T APPRECIATE IT.  AND HERE IS WHAT

25    HAPPENS.  IF I CAN TRUST MY LAWYER, IT MAKES MY LIFE SO

ER0024

14:55:50  1    MUCH EASIER BECAUSE WHEN A LAWYER SAYS SOMETHING TO ME AND
          2    I CAN TAKE IT TO THE BANK, THEN ALL I HAVE TO DO IS LOOK
          3    AT IT AND SAY, OKAY, IS THIS SOMETHING I CAN COMPARE TO
          4    SOMETHING ELSE.  WHEN I HAVE A LAWYER I CAN'T TRUST, IT
          5    MAKES MY LIFE VERY, VERY DIFFICULT.  SO FOR EXAMPLE, JUST
          6    ABOUT EVERYTHING YOU SAID TO ME THIS MORNING, ALL I'M
          7    TRYING TO DO IS FIND OUT ENOUGH INFORMATION TO BE ABLE TO
          8    MAKE A DECISION, AND I CAN'T TRUST A WORD YOU SAY, NOT A
          9    WORD.
         10        MR. COX:  I'M SORRY THAT YOU FEEL THAT WAY.  I'VE
         11    TRIED CASES IN THIS STATE FOR 45 YEARS, AND I'VE NEVER HAD
         12    THAT KIND OF PROBLEM WITH ANY JUDGE I'VE EVER BEEN WITH OR
         13    THE MEMBERS OF THE STATE BAR ETHICS COMMITTEE THAT I WAS A
         14    MEMBER OF.
14:56:36 15        THE COURT:  WELL, YOU HAVE NOW, AND I'M GOING TO TELL
         16    YOU WHAT.  IT DOESN'T DO YOUR CLIENT ANY SERVICE
         17    WHATSOEVER WHEN YOU MISREPRESENT SOMETHING TO THE COURT OF
         18    APPEALS AND YOU IMPUGN ANOTHER JUDGE AND THE JUDGE'S
         19    MOTIVATION.  IT'S PROBLEMATIC, IN MY OPINION, BECAUSE YOU
         20    KNOW THAT THE STATE BAR RULES -- 3.3 WHATEVER IT IS 3.31
         21    -- SAYS THAT YOU MAY NOT MAKE A REPRESENTATION TO A JUDGE
         22    AS AN OFFICER OF THE COURT THAT IS NOT ACCURATE.  NOW YOU
         23    COULD HAVE MADE EVERY ARGUMENT YOU MADE TO THE COURT OF
         24    APPEALS WITHOUT SAYING WHAT YOU SAID ABOUT ME.  YOU COULD
         25    HAVE SAID, YOUR HONORS, THE EVIDENCE; RIGHT?  BUT THAT'S

ER0025

14:57:20  1    NOT WHAT YOU SAID.  YOU HAD TO DRAG ME INTO IT.  I DON'T

2    MEAN TO IMPUGN THE JUDGE'S MOTIVATION; ISN'T THAT WHAT YOU

3    SAID?

4        MR. COX:  IT'S ON THE TAPE THERE, JUDGE.  WHATEVER I

5    SAID, I SAID.

6        THE COURT:  ALL RIGHT.  BY THE WAY, I WAS GOING TO

7    CREATE SOME PAIN ON THE PART OF MR. BAIN BECAUSE I ASKED

8    HIM TO DO AN EXERCISE FOR ME WITH REGARDS TO EXHIBIT NR.

9    AND OVER THE LUNCH HOUR, I WAS LOOKING AT EXHIBIT 109,

10    EXHIBIT 109A AND 109B, WHICH WAS YOUR EXHIBIT.  IT'S OVER

11    500 PAGES LONG.  HERE, MR. COX, DO ME A FAVOR, READ THIS

12    FOR ME READ, WOULD YOU?  HAND THAT TO MR. COX OR MR.

13    ALLEN.  MR. ALLEN PROBABLY HAS BETTER EYESIGHT THAN MR.

14    COX I'M GOING TO GUESS.

14:58:55  15        MR. ALLEN:  IS THERE A QUESTION, YOUR HONOR?

16        THE COURT:  YEAH.  READ IT TO ME.

17        MR. ALLEN:  IS THERE A PARTICULAR PART OF IT?

18        THE COURT:  JUST READ IT TO ME.  WHY DON'T YOU START

19    WITH THE --

20        MR. ALLEN:  -- ENVIRONMENTAL CHEMISTRY LABORATORY,

21    CODE 918, NAVAL AIR STUDIES, NORTH ISLAND BUILDING M9, SAN

22    DIEGO, CALIFORNIA, 92135, TELEPHONE 619-545-8431, FAX

23    619-545-87 --

24        THE COURT:  WHY DON'T YOU MOVE DOWN TO WHERE IT SAYS

25    TITLE 22 METALS, TTLC?

158

```
 1
 2                    C-E-R-T-I-F-I-C-A-T-I-O-N
 3
             I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
 4   AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
     DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
 5   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
     THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
 6   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
     WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
 7   CONFERENCE.
 8           DATED:   OCTOBER 21, 2014, AT SAN DIEGO, CALIFORNIA.
 9
10                    /S/ JULIET Y. EICHENLAUB
                      JULIET Y. EICHENLAUB, RPR, CSR
11                    OFFICIAL COURT REPORTER
                      CERTIFIED SHORTHAND REPORTER NO. 12084
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

164

1

1          UNITED STATES DISTRICT COURT

2       FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4

5

6   CHRISTINE MYERS, GUARDIAN AD        .
    LITEM, LACIE MYERS, A MINOR,        .
                                        . NO. 02-CV-1349
7        PLAINTIFF,                     .
                                        . DECEMBER 5, 2011
8           V.                          .
                                        . 11:50 A.M.
9   UNITED STATES OF AMERICA,           .
                                        . SAN DIEGO, CALIFORNIA
10          DEFENDANT.                   .
    . . . . . . . . . . . . . . . . .

11

12

13

            TRANSCRIPT OF APPEAL MANDATE HEARING
14        BEFORE THE HONORABLE ROGER T. BENITEZ
              UNITED STATES DISTRICT JUDGE

15

16   APPEARANCES:

17

     FOR THE PLAINTIFF:      BARTKO, ZANDEL, TARRANT & MILLER
18                           BY:  STEPHEN T. COX, ESQ.
                             900 FRONT STREET, SUITE 300
19                           SAN FRANCISCO, CALIFORNIA  94111

20   FOR THE DEFENDANT:      UNITED STATES DEPARTMENT OF
                             JUSTICE
21                           BY:  KIRSTEN L. WILKERSON, ESQ.
                             BY:  JOHN ADAM BAIN, ESQ.
22                           1331 PENNSYLVANIA AVENUE
                             SUITE 8014-S
23                           WASHINGTON, D.C., 20004

24   COURT REPORTER:         DEBORAH M. O'CONNELL, RPR, CSR
                             880 FRONT STREET, ROOM 4290
25                           SAN DIEGO, CALIFORNIA, 92101
     REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

2

1          SAN DIEGO, CALIFORNIA, DECEMBER 5, 2011, 11:50 A.M.

2                              * * * *

3

4          THE CLERK:  CALLING CASE NO. 02-CV-1349, LACIE MYERS

5    VS. UNITED STATES OF AMERICA, APPEAL MANDATE HEARING.

6          THE COURT:  GOOD MORNING.  PLEASE REGISTER YOUR

7    APPEARANCES FOR THE RECORD.

8          MR. COX:  STEPHEN COX, FOR THE PLAINTIFF, CHRISTINE

9    MYERS, GUARDIAN AD LITEM OF LACIE MYERS, A MINOR.

10         MS. WILKERSON:  KIRSTEN WILKERSON, FOR THE UNITED

11   STATES, DEFENDANT.

12         MR. BAIN:  ADAM BAIN, FOR THE UNITED STATES.

13         THE COURT:  ALL RIGHT.  WELL, LET'S SEE, TODAY IS THE

14   DATE FOR SPREADING THE MANDATE.  I GUESS THIS CASE LANGUISHED

15   AT THE COURT OF APPEALS FOR TWO YEARS, A NOTICE OF APPEAL

16   HAVING BEEN FILED IN JULY OF 2009.  AND THEY ISSUED AN OPINION

17   TWO YEARS LATER ON JULY 15TH, 2011.

18         I HAD TO THROW THAT IN AS AN ASIDE, SINCE MY GOOD FRIEND

19   AND COLLEAGUE JUDGE BENNETT FELT THAT IT WAS ABSOLUTELY

20   NECESSARY TO POINT OUT THAT THE CASE LANGUISHED HERE FOR THREE

21   YEARS.

22         LET ME ASSURE YOU ALL, I BELIEVE THOSE ARE PROBABLY

23   LACIE'S PARENTS SITTING BACK THERE, RIGHT?  NO?  ANYWAY --

24         MS. WILKERSON:  COUNSEL FOR THE MARINE CORPS AND THE

25   NAVY, YOUR HONOR.

3

1        THE COURT:  OKAY.  WELL, LET ME POINT OUT, FIRST OF

2   ALL, THERE WASN'T A DAY OR A WEEK DURING THAT THREE-YEAR PERIOD

3   THAT I DIDN'T THINK ABOUT THIS CASE.  I SCOURED THE RECORDS

4   SEVERAL TIMES, TRYING TO MAKE SURE THAT WHENEVER I ISSUED MY

5   RULING, THAT I COULD DO SO IN GOOD CONSCIENCE.

6        I SUPPOSE IT IS ALWAYS EASY TO RETRY CASES, BUT I ASSURE

7   YOU IT DID NOT ESCAPE MY THOUGHT PROCESS.  I DISCUSSED IT WITH

8   MY LAW CLERKS REGULARLY.

9        AND SO, LET ME FURTHER POINT OUT THAT, AS COUNSEL KNOWS, I

10  TRIED TO GET YOU FOLKS TO SETTLE THIS CASE DURING THAT PERIOD

11  OF TIME, IF FOR NO OTHER REASON THAN I THOUGHT THAT THE OUTCOME

12  WOULD NOT BE FAVORABLE TO THE PLAINTIFF.  AND I THOUGHT THAT IT

13  WOULD BE HELPFUL FOR YOU TO TRY TO SETTLE THE CASE.

14       AND THAT LASTLY, I WOULD POINT OUT TO MY GOOD FRIEND AND

15  COLLEAGUE JUDGE BENNETT THAT I HAVE MORE CRIMINAL CASES ON MY

16  DOCKET THAN HIS ENTIRE DISTRICT.  I HAVE MORE CIVIL CASES ON MY

17  DOCKET THAN IN HIS ENTIRE DISTRICT.

18       SO, UNFORTUNATELY, ALTHOUGH I WOULD LIKE TO BE ABLE TO,

19  PERHAPS, DECIDE CASES SOONER -- I MIGHT POINT OUT THIS IS THE

20  ONLY TIME THIS HAS EVER HAPPENED IN MY CAREER.  THE CASE DID

21  NOT LANGUISH.

22       LET ME FURTHER POINT OUT, MR. COX, MY RECOLLECTION IS THAT

23  WHEN WE WERE IN TRIAL, YOU STARTED INTRODUCING EVIDENCE OF THE

24  FACT THAT LACIE -- THERE WAS A TEST THAT IT SHOWED THAT LACIE

25  HAD THALLIUM IN HER SYSTEM?

4

1          MR. COX:  THAT'S CORRECT.

2          THE COURT:  IS THAT RIGHT?

3          MR. COX:  YES.

4          THE COURT:  AND I HAVE A RECOLLECTION OF HAVING ASKED

5  YOU WHY THAT WAS RELEVANT SINCE WE WERE TALKING ABOUT DUTY AT

6  THE TIME.  DID I NOT DO THAT?

7          MR. COX:  YOU MAY HAVE, PROBABLY DID.  I DON'T

8  REMEMBER THAT.

9          THE COURT:  AND AS I RECALL, YOU INDICATED THAT YOU

10 THOUGHT THAT WAS RELEVANT TO THE BREACH OF DUTY ISSUE.  WAS

11 THAT NOT RIGHT?

12         MR. COX:  HONESTLY, YOUR HONOR, I'M NOT CLEAR WHAT

13 THE REASONING WAS.  I KNOW THAT THERE WAS -- I KNOW THAT THERE

14 WAS EVIDENCE THAT CAME IN ABOUT THAT.

15         THE COURT:  RIGHT.

16         MR. COX:  AND THERE WAS A DISCUSSION AND ARGUMENT BY

17 BOTH SIDES, AND THE COURT PERMITTED IT, SO --

18         THE COURT:  RIGHT.

19         MR. COX:  EXACTLY WHY, WHAT THE REASONING WAS, IS --

20 YOU KNOW, IS ANOTHER QUESTION.

21         THE COURT:  WELL, THE REASON WHY I MENTIONED IT IS

22 BECAUSE, YOU KNOW, IT'S ONE THING TO GET RESERVED -- OR

23 REVERSED -- WHEN -- I'M NOT TAKING ISSUE WITH THE QUESTION OF THE

24 DISCRETIONARY DUTY ISSUE IN THIS CASE.  BECAUSE THAT MIGHT HAVE

25 BEEN CLOSE.  BUT IT'S REALLY TOUGH WHEN, YOU KNOW, YOU GET

5

1    REVERSED, AND SOMEBODY SAYS SOMETHING LIKE -- SEE, JUDGE

2    BENNETT GETS THE LAST WORD BECAUSE HE GOT TO PUBLISH THE

3    OPINION.  BUT I GET THE LAST WORD BECAUSE AT LEAST I GET TO GET

4    THIS OFF MY CHEST.  SOMEWHERE IN THERE, HE SAYS SOMETHING TO

5    THE EFFECT THAT -- I THINK IT'S BOTH IN A FOOTNOTE AND AT PAGE

6    96.5, WHEN IT TALKS ABOUT THE FACT THAT I SHOULD NOT HAVE

7    ADDRESSED THE ISSUE OF CAUSATION.

8        NOW WE WENT BACK, AND WE LOOKED THROUGH THE RECORD, AND

9    THERE IS NOT ONCE, NOT ONCE IN THE RECORD THAT I EVER ADDRESSED

10   THE ISSUE OF HER HAVING THALLIUM IN HER SYSTEM AS A MATTER OF

11   CAUSATION.  IT WAS FOR THE PURPOSE OF DETERMINING

12   FORESEEABILITY, WHICH I MIGHT ADD, IS, IN FACT, SOMETHING THAT

13   IS ADDRESSED IN A CASE THAT HE CITES, WHICH I BELIEVE IS THE

14   BIGBY VS. -- NO, I'M SORRY, SCOTT VS. CHEVRON CASE, WHICH TALKS

15   ABOUT THE FACT THAT THAT WOULD BE RELEVANT TO FORESEEABILITY,

16   WHICH IS SOMETHING THAT YOU HAVE TO CONSIDER IN CONNECTION WITH

17   THE DUTY.

18       SO AGAIN, I DON'T MIND BEING REVERSED; THAT GOES WITH THE

19   TERRITORY, PARTICULARLY OUT HERE IN THE NINTH CIRCUIT.  BUT, AT

20   LEAST IF I'M GOING TO GET REVERSED, I'M GOING TO GET REVERSED

21   BY SOMEONE WHO HAS ACTUALLY READ THE RECORD AND UNDERSTOOD WHAT

22   IT WAS I WAS SAYING WHEN I WAS RULING ON IT.

23       SO NOW, HAVING GOTTEN THAT OFF MY CHEST, COUNSEL, HAS

24   THERE BEEN ANY DISCUSSION ABOUT SETTLEMENT IN THIS CASE SINCE

25   THE OPINION WAS ISSUED?

10

1  LAW THAT THE GOVERNMENT --

2          THE COURT:  YEAH, AND DID YOU SEEK CERTIORARI ON THIS

3  CASE?

4          MS. WILKERSON:  YOUR HONOR, WE DID SEEK BOTH PANEL

5  REHEARING AND REHEARING EN BANC.  UNFORTUNATELY, NO JUDGE VOTED

6  FOR THE REHEARING EN BANC.  WE'RE IN INTERNAL DISCUSSIONS

7  REGARDING CERTIORARI RIGHT NOW.

8          THE COURT:  HOW MUCH LONGER DO YOU HAVE?

9          MS. WILKERSON:  LESS THAN 30 DAYS.

10         THE COURT:  YOU BETTER MAKE UP YOUR MINDS PRETTY

11  QUICK, HUH.

12         MS. WILKERSON:  RED TAPE --

13         THE COURT:  I'M GOING TO TELL YOU, IF I WAS IN THE

14  GOVERNMENT'S SHOES, I THINK YOU'D PROBABLY LOSE, TO BE HONEST

15  WITH YOU, ON THE DISCRETIONARY FUNCTION.

16         MS. WILKERSON:  THAT IS NOT THE ISSUE THAT WE'RE

17  SEEKING CERTIORARI ON, YOUR HONOR.

18         THE COURT:  I SEE.

19         MS. WILKERSON:  IT'S THE ABUSE OF DISCRETION.

20         THE COURT:  WELL, THAT'S A DIFFERENT STORY

21  ALTOGETHER.  I SUPPOSE -- I SUPPOSE -- I SUPPOSE THAT I WOULD

22  HAVE A BIASED VIEW OF THAT.  BUT I WOULD JUST SIMPLY SAY THAT I

23  WOULD WHOLEHEARTEDLY CONCUR WITH JUDGE RAWLINSON'S POSITION IN

24  THAT CASE AND COMPLETELY AND TOTALLY DISAGREE WITH JUDGE

25  BENNETT AND MY GOOD FRIEND JUDGE KOZINSKI, BUT WHATEVER.

20

1    ENCOURAGE YOU TO COOPERATE ON DISCOVERY SO THAT I DON'T HAVE TO

2    GET INVOLVED.  IT IS NOT GOING TO MAKE ME VERY HAPPY IF I HAVE

3    TO GET INVOLVED IN DISCOVERY DISPUTES.  AND DO THINK ABOUT

4    SETTLING THIS CASE, OKAY.

5        ANYTHING ELSE WE NEED ADDRESS?

6            MR. COX:  YES.  THERE IS JUST ONE THING.

7            THE COURT:  WHAT IS THAT?

8            MR. COX:  I WOULD BE REMISS IF I DIDN'T MENTION THIS.

9            THE COURT:  WHAT IS THAT?

10           MR. COX:  I UNDERSTAND THE COURT'S FEELING ABOUT

11   JUDGE BENNETT AND THE FINDING THAT HE MADE.

12           THE COURT:  RIGHT.

13           MR. COX:  AND I DON'T WANT LACIE MYERS TO GET CAUGHT

14   IN THAT CROSS FIRE.

15           THE COURT:  IT'S NOT.  I THINK YOU ASKED FOR ME TO BE

16   REMOVED AND SOME OTHER JUDGE TO BE -- THAT IS NOT GOING TO

17   HAPPEN.  BECAUSE AS I SAID TO YOU, I THOUGHT ABOUT THIS CASE

18   EVERY WEEK, IF NOT EVERY DAY, DURING THAT TIME THAT I HAD IT

19   UNDER SUBMISSION, OKAY.

20       LACIE MYERS HAS ABSOLUTELY NOTHING TO DO WITH JUDGE

21   BENNETT OR JUDGE KOZINSKI'S OPINIONS, OR MY FEELINGS ABOUT THE

22   OPINION.  AND IN FACT, AS I SAID BEFORE, I STRONGLY RECOMMENDED

23   YOU FOLKS TRY TO SETTLE THIS CASE.  SO DON'T WORRY ABOUT THAT.

24   THAT IS NOT AN ISSUE.

25       BUT ON THE OTHER HAND, LET ME SAY THIS, I'M SORT OF PUT IN

22

```
 1                     C-E-R-T-I-F-I-C-A-T-I-O-N

 2           I HEREBY CERTIFY THAT I AM A DULY APPOINTED,

 3   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED

 4   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

 5   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;

 6   THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY

 7   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES

 8   WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL

 9   CONFERENCE.

10           DATED:  DECEMBER 27, 2011, AT SAN DIEGO, CALIFORNIA

11

12                        _____

13                        S/DEBORAH M. O'CONNELL, CSR #10563
                          REGISTERED PROFESSIONAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```